**IN THE COURT OF APPEALS OF IOWA**

No. 17-1161
Filed May 2, 2018

**IN RE THE MARRIAGE OF STACY HERUM AND SCOTT HERUM**

**Upon the Petition of**
**STACY HERUM, n/k/a STACY ZUMBACH,**
        Petitioner-Appellee,

**And Concerning**
**SCOTT HERUM,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Emmet County, Nancy L. Whittenburg, Judge.

        Scott Herum appeals the district court decision partially granting and partially denying his petition to modify a dissolution decree. **AFFIRMED.**

        Christine B. Skilton of Cronin, Skilton & Skilton, P.L.L.C., Charles City, for appellant.

        Laura J. Parrish of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C., Decorah, for appellee.

        Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

Scott Herum asked the district court to modify the alimony, physical-care, and child-support provisions of the decree dissolving his marriage to Stacy Zumbach. Scott's modification petition cited the declining farm economy, Stacy's new romantic relationship, and the couple's eldest son moving in with Scott as material changes since entry of the decree. The court partially granted Scott's petition but on appeal he contends the court committed several errors. Because Scott did not establish any basis for further modification, we affirm.

## I.     FACTS AND PRIOR PROCEEDINGS

Scott and Stacy had a fifteen-year marriage during which they had three children: a son D.H., born in 1998, a daughter Em.H., born in 2001, and a son Et.H., born in 2005. Also during their marriage, Scott and Stacy built and ran a large family farm comprising several thousand acres of land. At the time of the dissolution in 2012, they filed a joint stipulation and property settlement which the court approved and wholly incorporated into the decree. The record contains very limited information regarding the parties' finances before dissolution. Part of the purpose of the stipulated decree, according to the parties, was to keep financial information private. The parties did file a joint agricultural balance sheet showing they had a net worth of around $5.9 million dollars. But, the stipulation and subsequent agricultural balance sheet show Stacy received only around $1.3 million dollars worth of property in the dissolution. In addition, Scott agreed to pay Stacy monthly $3000 in child support and $2500 in alimony. The parties had joint custody, but Stacy had physical care with reasonable and liberal visitation to Scott. Neither party appealed the decree.

In 2015, Scott filed a petition for modification, alleging several substantial changes in circumstances. Since the decree, the couple's eldest son, D.H., had moved in with Scott; Scott therefore asked for a transfer of physical care and a reduction in his child support obligation. The farm economy had taken a downturn, and Scott asserted he was unable to continue making alimony payments. Also, Scott alleged Stacy was cohabiting with her boyfriend, Dennis Tobin, and therefore alimony should be terminated. He also asserted Stacy's relationship with Dennis was creating a poor environment in Stacy's home such that Scott should be given more time with the children.

Stacy stipulated before the modification hearings that physical care of D.H. should be transferred to Scott. The district court agreed and, finding D.H. had completed high school during the pendency of the modification, reduced Scott's child support obligation to $2200 per month, as set out in the decree. With respect to alimony, the district court found the support award was actually part of the property division and was therefore non-modifiable. In addition, the court found Scott did not meet the burden to show the custody arrangements of the two younger children should be disturbed.

On appeal, Scott contends (1) the district court erred in finding the alimony award was a part of the property division and therefore unmodifiable; (2) the court should have increased his parenting time; (3) the court erred in not complying with the child support guidelines under Iowa Court Rule 9.11 and should have reduced his child support obligation due to a substantial change in circumstances; Scott also asserts the court should have awarded him retroactive reimbursement of child support paid; and (4) the court's delay in issuing the modification decision

constituted an abuse of discretion and violated Iowa Court Rule 22.10. Both parties request attorney fees.

## II.    LEGAL STANDARDS AND SCOPE OF REVIEW

Because all the following issues lie in equity, we review the modification de novo. *In re Marriage of Pals*, 714 N.W.2d 644, 646 (Iowa 2006). While we are not bound by the fact-findings of the district court, we accord them weight, especially as to credibility determinations. *In re Marriage of Dean*, 642 N.W.2d 321, 323 (Iowa Ct. App. 2002).

## III.   ANALYSIS

### A. Alimony

Scott petitioned to modify the alimony award based on a substantial change in circumstances: his reduced farm income and Stacy's alleged cohabitation with her boyfriend. The district court denied Scott's request to terminate his alimony obligation. On appeal, Scott argues it was error for the court to "modify the decree from the award of traditional alimony to a property settlement." But the district court did not modify the decree. Instead, it found Stacy's alimony constituted a property award that—based on the parties' own stipulation—was not subject to modification. On our de novo review of the record, we disagree with the district court's reasoning but reach the same result.

Under Iowa law, marital property should be divided equitably between the parties. *See* Iowa Code § 598.21 (2015). An equitable division is not always strictly equal. *In re Marriage of Hansen*, 886 N.W.2d 868, 871 (Iowa Ct. App. 2016). Here, Scott and Stacy agreed that from their $5.9 million estate Stacy would take property equaling only $1.3 million. Scott agreed to pay child support of $3000

per month with reductions when the children turned eighteen or graduated from high school. Scott also agreed to pay Stacy $2500 per month in alimony "until Stacy attains the age of sixty-five (65) years, dies, or remarries, whichever first occurs." Scott would maintain life insurance coverage with Stacy as the primary beneficiary for $500,000 in the event of his untimely death before any of the terminating events. Scott and Stacy further agreed, "Neither the amount nor the term of the alimony shall be modified."

A stipulation is a contract between the parties. *In re Marriage of Morris*, 810 N.W.2d 880, 886 (Iowa 2012). But, the stipulation

> is not binding on the court, as the court has the responsibility to determine whether the provisions upon which the parties have agreed constitute an appropriate and legally approved method of disposing of the contested issues . . . . [T]he court has the authority to reject the stipulation. Consequently, once the court enters a decree adopting the stipulation, the decree, not the stipulation, determines what rights the parties have . . . . [I]n ascertaining the rights of the parties after final judgment, it is the intent of the district court that is relevant, not the intent of the parties.

*Id.* (internal quotations and citations omitted). In other words, a decree should not be affirmed just because the parties agreed to the stipulation providing the basis for the court's decisions. *See In re Marriage of Jones*, 653 N.W.2d 589, 593–94. On review,

> [a] judgment or decree is to be construed like any other written instrument. The determinative factor is the intention of the court as gathered from all parts of the judgment. Effect must be given to that which is clearly implied as well as that which is expressed. In construing a judgment, force and effect should be given every word, if possible, to give the judgment as a whole a consistent, effective and reasonable meaning.

*In re Marriage of Lawson*, 409 N.W.2d 181, 182–83 (Iowa 1987) (internal quotations and citations omitted).[1]  A husband and wife "may arrange between themselves for the disposition of their property interests . . . and effect will be given by the court to a stipulation, if entered into in good faith and the provisions thereof are found to be fair and reasonable." *Slattery v. Slattery*, 116 N.W. 608, 609 (Iowa 1908).

Here, the decree court found the stipulation was "fair and equitable and should be incorporated as part of this Decree . . . in its entirety, the same as though fully set forth herein."  The decree court also stated, "The property rights of the parties, as well as their rights, privileges, and obligations as parents, shall be governed by the terms and conditions therein contained," including all the provisions set out above.  Neither party appealed the original decree.  In this appeal, neither party has asserted that any provision of the stipulation or decree is unenforceable, including the provision that disallows modification of the alimony amount and duration.[2]

Instead, Scott's modification petition asked the court to apply Iowa Code section 598.21C(1) and find a substantial change in circumstances justified terminating the alimony award.  But the court instead, analyzing the case under

---

[1] Scott encourages us to resolve these issues on contract principles.  This is not the rule when the court merges the stipulation into the decree, as the court did here.  *See Morris*, 810 N.W.2d at 886.

[2] A recent supreme court case addressed a provision in a pre-marital agreement waiving attorney fees in a subsequent dissolution action.  *In re Marriage of Erpelding*, ___ N.W.2d ___, ___, 2018 WL 1122305 (Iowa 2018).  The supreme court determined "a premarital agreement waiver of attorney fees pertaining to child support or spousal support is unenforceable because it adversely affects a spouse's or child's right to support in contravention of [Iowa Code] section 596.5(2)." *Id.* at ___.  Here, neither party argues the non-modification provisions for either child support or alimony have an analogous "adverse effect."

the principles of *Knipfer v. Knipfer*, 144 N.W.2d 140 (Iowa 1966), found the award constituted a non-modifiable property settlement.[3]  In *Knipfer*, our supreme court found an award for "alimony" was a property division provision where the wife gave up her share in substantial marital property.  144 N.W.2d at 145.  The award was, therefore, not modifiable.  In *Knipfer*, the wife received an award of $500 per month for as long as she lived, "but in any event for a minimum period of ten years."  *Id.* at 144.  This provision resulted in the wife receiving at least $60,000 over ten years, instead of an initial award of an equitable share of the marital estate, valued around $100,000.  *Id.*  The payments did not terminate upon the wife's remarriage.  *Id.*  Ostensibly, they would not terminate within the minimum period of ten years, even upon the wife's death.  *Id.*  The husband was required to maintain a life insurance policy of $50,000 for the benefit of the wife, in the event of his untimely death.  *Id.*  The court found the award was "definite, certain and fixed and was to continue for a definite time, even beyond [the wife's] life, a factor not generally embodied in an alimony allowance."  *Id.* at 144.  The fact the award was made in installments rather than as a lump sum, the court found, was immaterial.  *Id.*  But, an important distinguishing factor was that the wife, at the time of the divorce, was a ward of the state and confined in an institution due to debilitating alcoholism.  *Id.*  The court found payment in installments was preferable to a lump sum because she was believed to be incapable of managing money on her own.  *Id.*  What was significant was that the payment was permanent, "for a fixed or determinable sum," and given in lieu of the wife's rights in property or her dower rights.  *Id.*

---

[3] Iowa Code § 589.21(7) states, "Property divisions made under this chapter are not subject to modification."

In reaching its conclusion, the court noted the decree's use of the term "alimony" was not conclusive. *Id.* at 142. In deciding whether an award constitutes alimony or a property division, courts must consider

> all the relevant factors, including the provisions of the agreement between the parties, the circumstances under which the agreement was made, the nature and value of the property owned by and to be divided between the parties, the original divorce proceedings and the terms of the divorce decree sought to be modified.

*Id.* at 143.

Scott distinguishes *Knipfer*, contending the award to Stacy is for alimony, and therefore modifiable. Stacy urges us to accept the district court's reasoning and find the alimony award was actually part of the property division based on her testimony that she voluntarily took a smaller share of the property in exchange for a larger alimony award.

Since *Knipfer*, our courts have rarely had occasion to decide whether an award labeled "alimony" is actually a property division or vice versa. In *Zinger v. Conklin*, the decree court divided the marital property and ordered the husband to pay the wife $750 within thirty days of the entry of the decree and $250 monthly for two years, followed by $225 monthly until the wife's death or remarriage, whichever should occur first. No. 12-0433, 2012 WL 3196123, at *1 (Iowa Ct. App. Aug. 8, 2012). These payments, the district court explained, "shall represent additional funds to accomplish an equal division of the assets of the parties." *Id.* The court further decreed neither party was liable for any alimony. *Id.* When the husband died before the wife, the wife sued the estate for continuation of the payments. *Id.* But, this court determined the award was for alimony and therefore terminable upon the husband's death. *Id.* at *3. The award was not for a "fixed or

determinable sum," as was the case in *Knipfer*. *Id.* We further found the language of the decree suggested the award was alimony for two reasons: first, because the payments were to be made to the clerk of court, usually a feature of alimony; second, because the payments terminated upon the wife's death or remarriage, language typically used to describe an alimony award. *Id.* Therefore, even if a decree specifically notes neither party gets alimony and additional funds are awarded "to accomplish an equal division" of marital assets, but does not establish a fixed or determinable sum and sets out conditions typical to an award of alimony, the court may determine the award is alimony and therefore modifiable in a subsequent action. *See id.*

In *In re Marriage of Harvey*, 393 N.W.2d 312, 314 (Iowa 1986), a wife appealed a modification to a decree granting her "periodic payments" where she also retained almost all of the marital assets. Our supreme court found the award was terminable upon her marriage because, although she argued it was a property division, the payments appeared to have been intended for the wife's future support and were intended to terminate upon her death. *Harvey*, 393 N.W.2d at 314. So, the court concluded, they were properly characterized as modifiable alimony payments.

In the present case, the decree includes no explicit language indicating the "alimony" award was meant to equalize the property division. The decree fully incorporates the parties' stipulation. The stipulation does not express the award labeled "alimony" serves a different purpose than traditional spousal support. The only indication to that effect is the provision that the alimony term "shall not be modified." The award terminates upon Stacy reaching the age of sixty-five, her

death, or her remarriage; Scott is not mandated to pay alimony for any minimum period, such as the ten years in *Knipfer.* *See* 114 N.W.2d at 144. So, the cumulative award is not a fixed and determinable sum. *See id.* In awarding alimony, the district court properly considers the distribution of marital property. Iowa Code § 598.21A(1)(c). Alimony can balance an otherwise inequitable division of property. *See In re Marriage of Becker*, 756 N.W.2d 822, 827 (Iowa 2008). But that does not render the alimony a part of the property division.

Here, the marital estate was not equally divided, and Stacy maintains the larger alimony award was meant to equalize the property division. At the modification hearing, she testified she purposely walked away from the marriage with only $1.3 million of the almost $6 million estate explaining, "I helped build that operation [the Herum farm]. I did not want to see it be sold, split up. Scott's family—I'm not that type of person. And I knew my son. I wanted something for him."[4] According to Stacy, she and Scott agreed there would be no changes to the decree once final, and she took the lesser property allocation based on that agreement. She testified she was not aware the alimony award could be modified, and would not have agreed to the stipulation had she known. When asked about her understanding of the combination of the property settlement and alimony, she said, "Scott and I made that agreement. We sat down together to avoid sitting here in court like we are today. We had built that operation together. We had

---

[4] The record shows Stacy contributed significantly to the growth of the farm from the roughly 300 acres Scott owned at their marriage to around 6700 acres at the time of their dissolution. Scott testified it was the sixteenth largest farm in the state of Iowa. Stacy left her job as a bank loan officer after their marriage to work full time on the farm operation. The couple's son, D.H., is active in Future Farmers of America and intends to farm. Both parents anticipate D.H. taking over the Herum farm in the future.

three wonderful kids. And we wanted to keep the court out of it. And I accepted that to keep him going." Stacy entered the stipulation knowing she would be receiving less than half the value of the marital estate.[5] Moreover, Stacy has paid taxes on the alimony, and Scott has deducted it from his earnings.

Under these circumstances, we conclude the "alimony" awarded in this case is properly understood as an alimony award, not part of a property settlement or in lieu of property. It appears from the stipulation and Stacy's testimony that the court awarded the amount of alimony to compensate for Stacy's smaller share of the property division. But, it is neither permanent nor for a fixed and determinable sum; terminates in the same way as an alimony award; and does not cumulatively result in an equitable division of marital assets. No language in the decree signals the alimony award should be read as part of the property settlement. No evidence in the record from the original dissolution proceedings shows either party intended alimony to be awarded in lieu of marital property. How the court distributes the marital property is an important consideration in determining the award of alimony. *See* Iowa Code § 598.21A. Stacy admits she received an inflated alimony award to make up for taking less of the property. Contrary to the district court's analysis, the circumstances presented here do not show the alimony award should be treated as part of the property division.

We must now decide how to address the modification petition. Generally, provisions for spousal support are final unless "there is a substantial change in

---

[5] Even if Stacy received the same alimony payments until she reached the age of sixty-five, she would receive only around $780,000 (26 years times $2500 per month) in addition to the property settlement, which does not approach half the marital assets at the time of the dissolution.

circumstances." *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014); *see also* Iowa Code § 598.21C(1). The decree provides the alimony amount and duration are not modifiable, and Stacy also testified she and Scott agreed the provisions were not subject to modification to protect their children and to avoid the "public display" caused by this type of litigation. Neither party directly appealed the decree, nor do they contend in this appeal that the modification provisions are not enforceable.[6] *See In re Marriage of Phares*, 500 N.W.2d 76, 79 (Iowa Ct. App. 1993) (explaining "parties may contract and dissolution courts can provide alimony is not modifiable"). Thus, we are left with the decree terms as written. Because the decree does not permit modification of the alimony except upon the termination events described, we deny the petition to modify alimony. Scott contends alimony should be terminated because Stacy is cohabiting with her boyfriend, but cohabitation is not one of the terminating events in the parties' stipulation.

## B. Modification of physical care[7]

Scott next contends the district court erred in not modifying the decree to grant him physical care[8] of the children due to "the emotional harm to the children done by their mother." Scott asserts Stacy has alienated the children from him by cohabiting with her boyfriend, Dennis, disallowing summer visits, and turning off the youngest child's cellphone. He asserts he offers the children superior care.

---

[6] Scott testified at the modification hearing he would never have agreed to a stipulation creating a non-modifiable alimony term, but he plainly did.

[7] Because the court modified the custody arrangement for Scott to have physical care of D.H., the following section addresses the two younger children only.

[8] It is unclear if Scott is seeking sole or joint physical care. Scott told the district court he wanted "half of the time" with the children. On appeal he asks for "more contact" with the children but also references "placement" with him.

A party seeking modification of a decree's physical care provision has two hurdles: (1) prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered and (2) prove a superior ability to minister to the needs of the children. *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). Non-exclusive lists of factors for determining what physical care arrangement is in the children's best interests are found in Iowa Code section 598.41(3) and in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). Once a physical care arrangement is in place, the party seeking to modify it has a heightened burden which we disturb for only the most cogent reasons. *See Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996).

We focus on Scott's claim a substantial change in circumstances occurred since the decree was entered, namely, Stacy has alienated the children from him. Scott alleges Stacy is cohabiting with Dennis[9] and "has turned the children into witnesses/advocates for her position through such influence"; Stacy did not allow their eleven-year-old son Et.H. to have a cellphone or attend summer visitation with Scott; and the children needed counseling because of Stacy's behavior.

In response, Stacy testified Et.H. did not visit Scott for several months of the preceding summer because Et.H. had an eye injury, needed medication every couple hours, and knew he could depend on Stacy to administer it.[10] Regular visitation resumed after that time. Stacy explained she disconnected Et.H.'s phone because he did not use it and could not get good service at Scott's house. The

---

[9] The eldest child, D.H., expressed concerns about Stacy's relationship with her boyfriend, and his concerns formed a partial basis for moving to his father's house.

[10] Et.H.'s counselor confirmed Et.H. gave this reason for not visiting Scott.

district court found, and we agree, Stacy was not cohabiting with Dennis. She acknowledged they were in a serious relationship, spent time in each other's homes, and assisted each other with farm chores on their respective farms. But they maintained separated residences, separate finances, and were not engaged in a business partnership. Scott faults Stacy for exposing the children to Dennis but admits he has dated several women since the divorce and invited a woman friend to join him and D.H. for lunch.

The record does not support Scott's assertions Stacy has acted to undermine his relationship with Et.H. and Em.H. Stacy communicates with Scott by email about the children's grades and Et.H.'s additional tutoring needs. Scott rarely, if ever, responds. When Et.H. expressed reluctance to spend time with Scott, Stacy sought out a counselor to work with their son. The counselor testified Et.H. initially demonstrated adjustment difficulties going between his parents' houses and experienced behavioral and emotional challenges. But Et.H. did not tell the counselor Stacy discouraged him from seeing Scott.

Stacy testified Dennis has a good relationship with the children. The counselor said Et.H. talked about Dennis in very favorable terms and enjoyed spending time with him. The counselor did not believe concerns about Dennis precipitated the boy's need for counseling. Stacy's father, testifying for Scott, described Et.H.'s relationship with Dennis as "awfully good" and the grandfather had no concerns about Dennis interacting with Em.H. either. Stacy's mother provided substantially the same testimony.

Both parents report Em.H. is an excellent student and talented musician. But Stacy testified Em.H. confronted her on multiple occasions about matters

related to the divorce she could only have heard from Scott. Scott admitted using Em.H. as a go-between so he does not have to speak with Stacy. Stacy testified Em.H. does not want to be placed in that position. Stacy also testified when the children are with Scott, fifteen-year-old Em.H. is responsible for helping her younger brother do his homework and get to bed because Scott is often gone.

We conclude Scott has not shown a substantial change in circumstances caused by Stacy's behavior. Et.H. and Em.H. have not expressed significant concerns about Dennis. Scott theorized some difficulties the children might have with Dennis but they do not comport with testimony from Stacy, the counselor, or the grandparents. Stacy did not prevent Et.H. from attending his summer visit with Scott; Et.H. chose to stay with his mother due to his eye injury. We find no credible evidence showing the children have needed counseling solely because of Stacy's conduct or new relationship.

We also conclude Scott has not demonstrated he can provide superior care. The record reflects he is less attentive to the children's schooling, activities, and needs than Stacy has been, even when Stacy has tried to keep him informed. Scott testified he had attended Et.H.'s baseball practice the previous week, but had not seen Em.H.'s band events in several months. He could not name the last time he attended a parent-teacher conference. And he was not aware how many days his children had missed school, though Stacy informed him of warning letters about attendance sent by their schools. The parents rarely, if ever, communicate regarding the children despite Stacy's efforts. Scott appears less able to support the children's relationship with their mother, while Stacy has been supportive of

their relationship with Scott. We see no reason to disturb the physical care arrangement.

## C. Child support

Scott contends the court erred in not complying with the child support guidelines without explanation, in not finding a change in circumstances justified modification, and in not awarding a retroactive reduction in his support obligation.

### 1. Child support guidelines and change of circumstances

Scott contends the district court erred in not modifying the child support in compliance with Iowa Court Rule 9.11, the Child Support Guidelines, and without making the required special findings. In support, he argues there has been a substantial change in circumstances to justify modification. We read Scott's argument as challenging both the initial decree's child support order and, separately, urging modification based on a change of circumstances, specifically D.H. moving in with him and a reduction in his farm income.

### a. Rule 9.11 compliance

Scott complains the modification court did not apply Rule 9.11.[11] But if Scott wanted to challenge the departure from the guidelines, he should have done so in a challenge of the original decree, not in the modification action. Neither party appealed the decree or moved to enlarge or amend it. Scott did not complain

---

[11] Rule 9.11 instructs the court "shall not vary from the amount of child support that would result from application of the guidelines without a written finding that the guidelines would be unjust or inappropriate" considering a number of criteria, including that "[s]ubstantial injustice would result to the payor, payee, or child(ren)."

about the lack of compliance with Rule 9.11 until his 1.904(2) motion following the modification decision. The court overruled the motion.[12]

We also believe the decree court complied with Rule 9.11 by finding, "[T]he child support guidelines are inappropriate and unjust under the special circumstances of this case for the reason that substantial injustice would result to [Stacy] or the child, or both[.]" The court declined to depart from the parties' agreed-upon amount of child support in consideration of the terms of the agreement, "including, but not limited to, the property and alimony provisions; the indemnification provisions; in anticipation that Scott's income will increase in future years and his acceptance of the associated risk that it may not increase" and other provisions. "[P]arents cannot lightly contract away or otherwise modify child support obligations." *In re Marriage of Mihm*, 842 N.W.2d 378, 384 (Iowa 2014). But here the decree court considered the disparate division of the marital property in awarding elevated alimony and child support, though departing from the child support guidelines, and made the findings necessary to explain the departure, as required under Rule 9.11. Similar to our holdings on alimony above, the district court considered the smaller share of property Stacy took and balanced it with higher alimony and child support awards.

### b. Modification based on change of circumstances

Scott asserts a substantial change of circumstances justifies modification of the original decree, specifically that D.H. moved in with him and his farm income declined. The district court granted Scott physical care of D.H. and reduced the

---

[12] The court granted the motion to the extent of correcting one typographical error.

child support obligation by operation of the decree provisions. So we address Scott's argument regarding a reduction in his farm income. A provision of the 2012 decree makes the child support order non-modifiable for seven years. The decree court explained this was justified by the above-discussed considerations as well as the parties' desire "to provide stability and reach a lasting agreement that avoids the costs of litigation[.]" Again, in light of the disparate property division, the parties agreed and the court approved, a term of non-modifiable child support that neither party challenged. On appeal, neither party asserts this term is not enforceable. We have in the past enforced a provision for permanent non-modifiable child support. *See In re Marriage of Pulley*, No. 05-1576, 2006 WL 2872493, at *2-4 (Iowa Ct. App. Oct. 11, 2006).

But, we do not need to decide if the term is enforceable because we find the argument was not properly raised. In each of Scott's modification and amended modification filings as well as his post-hearing brief, he requests a change in the child support obligation only pursuant to his request for a change in the physical care arrangement. The court granted him physical care of D.H. and changed the support obligation accordingly, but declined to change the physical care arrangement for the two younger children. The district court did not address any change in the child support obligation based on his reduced income because it was raised before it only in the context of challenging alimony. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Scott did not argue his child support

obligation should be reduced based on his reduced farm income until the appeal. The issue is not properly before us.

### 2.     Retroactive child support

Scott next contends the time it took to litigate the modification prejudiced him financially and caused him to overpay $22,400 in child support.  Scott notes the parties stipulated in May 2016 that he should have physical care of D.H., and D.H. turned eighteen in 2016 and graduated from high school May 21, 2017—all before the court's June 2017 decision.

The modification court did transfer physical care of D.H. to Scott and reduce Scott's child support obligation, as of the date of the decision.  But Iowa case law prevents courts from imposing a retroactive reduction in child support before modification is ordered.  *In re Marriage of Barker*, 600 N.W.2d 321, 323–24 (Iowa 1999); *see also In re Marriage of Smith*, No. 14-1684, 2015 WL 5965212, at *9–10 (Iowa Ct. App. Oct. 14, 2015) (striking down an order to pay retroactive child support and declining to overturn *Barker* when party argued the rule "is no longer fair and equitable with the current judicial delays"); *In re Marriage of Doubek*, No. 12-0628, 2013 WL 104962, at *2 (Iowa Ct. App. Jan. 9, 2013) (striking down an order for retroactive reimbursement of child support received); *In re Marriage of Wattonville*, No. 11-1148, 2012 WL 1439241, at *6 (Iowa Ct. App. Apr. 25, 2012) (remanding to the district court due to calculation error and declining to order reimbursement of child support through the recalculation decision).

The decree provides Scott's child support obligation for three children continues until the eldest child reaches the age of eighteen or graduates from high school, whichever occurs last.  When only two children are subject to child support,

Scott's obligation drops to $2200 per month. When the district court issued its modification ruling, it noted D.H. had turned eighteen and graduated from high school the previous month. It changed the child support obligation going forward to $2200 per month. The change could not be made retroactive. We find no error in the court's ruling.[13]

### D. Rule 22.10 violation

Next, Scott complains the belated ruling violated Iowa Court Rule 22.10 for reporting of pending cases and constituted an abuse of discretion for which this court should reverse and remand the decision. Scott filed his petition to modify in February 2015; the court set the matter for hearing in June and September 2016, and issued its decision in June 2017.[14] At the end of the modification hearings, the court informed the parties it would take some time to complete the ruling due to the court's trial schedule, pending priority matters on the court's docket, and the complexity of the legal issues.

Our supreme court has established a goal of resolving submitted issues within sixty days. To create some accountability, Iowa Court Rule 22.10 instructs judges to report monthly to the supreme court any matters "taken under advisement in any case for longer than 60 days, together with an explanation for the reasons for the delay and an expected date of decision." Scott presents no evidence the district court did not comply with this rule.

---

[13] Scott asks us to apply the analysis of *In re Marriage of Wade*, 780 N.W.2d 563, (Iowa Ct. App. 2010). But that case involved an order to retroactively increase child support, which is permitted. *Wade*, 780 N.W.2d at 566–67; *see Barker*, 600 N.W.2d at 323–24.

[14] There is a substantial pre-hearing record in this case including several trial continuances requested by both parties, numerous depositions, and extensive discovery disputes. The last of three hearings in the modification was on September 27, 2016. The court also gave the parties until October 31 to file post-hearing briefs. Scott filed his brief on October 31.

In *Poole v. Hawkeye Area Community Action Program*, 666 N.W.2d 560, 562 (Iowa 2003), the district court took sixteen months to rule on a relatively simple motion for new trial. Our supreme court found no abuse of discretion and no reason to either remand for a new trial or review that civil case de novo. *Poole*, 666 N.W.2d at 562. Here, the record included three days of trial and several issues of considerable complexity. The district court's ruling runs to almost thirty pages. We acknowledge there was a substantial interval between submission and ruling, but we do not find cause for reversal or remand.

### E. Attorney fees

Both parties ask for attorney fees on appeal. An award of attorney fees is not a matter of right, but rests in our discretion based on the parties' relative abilities to pay and the merits of the appeal. *In re Marriage of Buttrey*, 538 N.W.2d 322, 324 (Iowa Ct. App. 1995). Stacy largely prevailed under our review, and Scott should contribute toward her cost in defending against the appeal. We direct Scott to pay $4000 toward Stacy's appellate attorney fees. Costs of the appeal are taxed to Scott.

**AFFRIMED.**