STATE of Iowa, Appellee,

v.

Dickey E. KASTER, Appellant.

No. 90–489.

Supreme Court of Iowa.

May 15, 1991.

C. Joseph Coleman, Jr. of Mitchell, Coleman, Perkins & Enke, P.C., Fort Dodge, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., and Paul L. Martin, County Atty., for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, LAVORATO, and ANDREASEN, JJ.

HARRIS, Justice.

There are three questions in this appeal from defendant's convictions following a bench trial of four simple misdemeanors. Although we certainly award no trophies for judicial punctuality in deciding the case, we reject defendant's assertion he was denied a fair trial. We do find merit in one of defendant's two challenges to his sentence. We modify and affirm.

Defendant Dickey E. Kaster operates a fish hatchery and bait shop and holds a commercial fishing license. He was arrested and charged with three counts of violating Iowa Code section 109.32 (1987), for taking fish with a gill net. The fourth count involved operation of Kaster's boat. We had occasion to examine details of Kaster's arrest in *In re Kaster*, 454 N.W.2d 876 (Iowa 1990), in which Kaster challenged the forfeiture of certain property he used in his operation.

I. Kaster contends he should have been granted a mistrial because of the magistrate's long delay in deciding the case. The delay does seem incredible and inexcusable. Kaster's guilt or innocence involved the simplest of legal and factual questions. Trial lasted only four hours. Yet it took more than a year for the magistrate to reach the guilty verdicts.

■ Kaster contends the delay was prejudicial and denied him a fair trial for reasons which are analogous to speedy trial principles. He concedes he can claim no violation of his right to a speedy trial under Iowa rule of criminal procedure 27(2)(b). In the first place a person charged with a nonindictable crime does not have the speedy trial rights accorded to those charged with indictable offenses. *State v. Spieker*, 343 N.W.2d 841, 842 (Iowa 1984); *see also City of Des Moines v. Elliott*, 267 N.W.2d 44, 46 (Iowa 1978). In the second place Kaster was "brought to trial" within the time demanded for an indicted person by rule 27(2)(b).

Kaster argues it was nevertheless fundamentally unfair to subject him to increased and extended anxiety during the long period and to subject his fate in the prosecutions to the fact finder's fading memories of the evidence.

These concerns are to some extent valid, but they do not reach those underlying the speedy trial right. The United States Supreme Court has explained that

[t]he speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696, 704 (1982). Another concern underlying the speedy trial right is that a long delay might impair the ability of an accused to present a defense. Annotation, *Accused's Right to Speedy Trial Under Federal Constitution—Supreme Court Cases,* 71 L.Ed.2d 983, 987 (1983).

Kaster did not suffer a loss of liberty during the postsubmission delay. The extension of his anxiety while awaiting a result was vexing but was somewhat minimized by the relatively minor nature of the charge. Incarceration was highly unlikely. Kaster's fear that the magistrate's memory of the evidence might fade was also a valid concern. But, especially in view of the State's burden of proof, we cannot say he was given an unfair trial.

Kaster can claim no comfort from *State v. Drake,* 259 N.W.2d 862, 866 (Iowa 1977). Although dicta in that opinion may indicate that the speedy trial right extends to a trial court decision, the holding is only that the right does not extend to sentencing. We overrule any intimation in *Drake* that a speedy trial right is violated by delays in trying or deciding a case which is seasonably brought to trial.

■ We are far from unconcerned about delays in decision making in any court proceeding and have determined that a judicial decision ordinarily should be reached within sixty days after submission, even in the most complex matters. Acting on that determination in 1977 we adopted Iowa court rule 200. The rule requires judges and magistrates to file monthly reports with the state court administrator, listing any matter taken under advisement for more than sixty days, together with an explanation of reasons for the delay and the expected date of decision. A matter is deemed submitted under the rule even though briefs or transcripts have been ordered but have not yet been filed. We think this rule, which we adopted after extensive study and consideration, accommodates the twin demands of careful deliberation and the obvious necessity for reasonable celerity in resolving disputes. A failure to comply with rule 200 can precipitate discipline. *Matter of Carstensen,* 316 N.W.2d 889, 895 (Iowa 1982) (judge suspended without pay for sixty days for disregarding rule 200).

We note with regret that the magistrate did not list this delay in his rule 200 reports filed with our court administrator during the time the case was under submission. No explanation for the delay has ever been attempted. Notwithstanding its failure in this case to serve the purpose, we continue to hope that court rule 200 will suffice to impel punctuality in rulings. We reject at this time Kaster's suggestion that we supplement rule 200 by reversing convictions when, as here, there is unreasonable delay in reaching a decision. We find no merit in Kaster's contention that he should have been granted a mistrial.

■ II. The long delay was the catalyst for another of Kaster's assignments of error in which we do find merit. The General Assembly changed the amount of "civil" penalties which can be assessed against violators of the applicable statutes from five to fifteen dollars per fish. 1988 Iowa Acts ch. 1216, § 41 (now Iowa Code § 109.130 (1991)). The change became effective July 1, 1988. When sentence was imposed in May 1989 Kaster was fined fifteen dollars per fish in accordance with the enhanced penalty allowed under the amendment.

We have repeatedly held that legislation violates the ex post facto clause of both the Iowa and federal constitutions when it "punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to the law at the time when the act was committed." *State v. Soppe,* 374 N.W.2d 649, 652 (Iowa 1985) (quoting *Beazell v. State,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68, 70 L.Ed. 216, 217 (1925)); *State v. Anderson,* 338 N.W.2d 372, 375 (Iowa 1983); *see also In re Ponx,* 276 N.W.2d 425, 428 (Iowa 1979); *State v. Quanrude,* 222 N.W.2d 467, 470 (Iowa 1974).

The United States Supreme Court has recently stated:

Although increased punishments are not mentioned explicitly in the historical sources, the court has never questioned their prohibition, apparently on the theory that "[t]he enhancement of a crime, or penalty, seems to come within the same mischief as the creation of a crime or penalty."

*Collins v. Youngblood,* 497 U.S. ——, ——, 110 S.Ct. 2715, 2720, 111 L.Ed.2d 30, 40 (1990) (quoting *Calder v. Bull,* 3 Dall. 386, 397, 1 L.Ed. 648 (1798)).

■ The statute title for Iowa Code section 109.130 is "Civil Damages." The State contends this renders the assessment a mere civil fine and thus not subject to ex post facto principles. We think not. The purpose of the fine, which is stated in section 109.130 to be for "a person convicted of unlawfully ... taking any fish ...," is plainly punitive. It thus falls easily within the rule prohibiting ex post facto enhancement of fines. Kaster should have been fined five dollars rather than fifteen dollars per fish.

■ III. Kaster's final assignment challenges another provision in his sentence. The magistrate revoked Kaster's commercial fishing license for five years. Under Iowa Code section 109B.4(1) a commercial fishing license can be valid for no more than one year. Kaster contends his five-year suspension, ordered pursuant to Iowa Code section 110.21, was invalid because the suspension exceeded the period of the license.

Section 110.21 provides that violators' licenses can be suspended "for any definite period." The same statute elsewhere states: "A person shall not purchase a license for a privilege that was revoked or suspended during the period of revocation or suspension." The section obviously contemplates that the suspension can extend beyond the period of existing licenses and bar issuance of new or renewed ones.

There is nothing unique about the provision. Licenses of various kinds, including licenses to operate motor vehicles, are frequently revoked for periods which do not coincide with their expiration dates. The assignment is without merit.

Costs are taxed one-third to the State and two-thirds to Kaster.

AFFIRMED AS MODIFIED.