666 N.W.2d 560 (2003)
Latonya POOLE and Ricky Mallard, Individually and as Parents and Next Friends of their Minor Children, Xzavier Mallard, Quvondrick Mallard, and Victor Mallard, Appellants,
v.
HAWKEYE AREA COMMUNITY ACTION PROGRAM, INC. and Mercy Facilities, Inc., Appellees.
No. 01-1332.
Supreme Court of Iowa.
July 16, 2003.
*561 James C. Larew of Larew Law Office, Iowa City, for appellants.
Joseph T. Moreland of Hayek, Hayek, Brown & Moreland, L.L.P., Iowa City, for appellees.
LARSON, Justice.
These plaintiff-parents sued the owner and manager of their rental property on behalf of their children for damages allegedly caused by exposure to lead on the rental property. The district court rejected the claim, and we affirm.

*562 I. Facts and Prior Proceedings.

Latonya Poole and Ricky Mallard, on behalf of three of their children, Xzavier, Quvondrick, and Victor Mallard, sued Mercy Facility, Inc. and Hawkeye Area Community Action Program, Inc., as owner and manager, respectively, of the Iowa City home in which the Poole-Mallard family lived. The plaintiffs allege that, during the three-month period the family lived there, the children were exposed to high levels of lead. Latonya sued for breach of contract and breach of implied warranty of habitability, demanding both compensatory and punitive damages. Ricky sued for loss of consortium but later withdrew that claim. The district court heard the case, without a jury, from March 27 until April 7, 2000. The court entered a ruling on August 14, 2001, finding against the plaintiffs on all claims.

II. Issues Raised.

The plaintiffs complain that the district court erred in (1) delaying its ruling for an unreasonable length of time, (2) admitting school records of nonparty siblings, and (3) finding insufficient evidence to support the plaintiffs' claims.

III. The Sixteen-Month Delay.

In January 2001 counsel from both sides jointly wrote to the court to inquire about when a ruling might be expected. The court responded in March 2001, saying the ruling would be completed as soon as possible and stated reasons for the delay. The ruling was filed on August 14, 2001, approximately sixteen months after the case was submitted.
The plaintiffs argue that, because of the delay in ruling, the case should be reversed and remanded, or in the alternative, it should be reviewed by us under a de novo standard. They offer limited case support for a remand but offer no legal support for a de novo standard of review.
We have established a goal of resolving submitted issues in sixty days, and to that end, we have adopted a rule providing that all trial court judges and magistrates
shall report monthly to the supreme court, through the office of the state court administrator, all matters taken under advisement in any case for longer than 60 days, together with an explanation of the reasons for the delay and an expected date of decision.
Iowa Ct. R. 22.10(1) (2002).
We have said this rule "accommodates the twin demands of careful deliberation and the obvious necessity for reasonable celerity in resolving disputes," State v. Kaster, 469 N.W.2d 671, 673 (Iowa 1991), and was "designed to provide a system of accountability, promoting the orderly and expeditious disposition of all matters submitted to a judge or magistrate." In re Carstensen, 316 N.W.2d 889, 893 (Iowa 1982). The district court, in response to the joint letter from counsel, explained that the illness of two judges and the press of priority matters, including involuntary hospitalizations, custody cases, and criminal matters, as well as the length and complexity of the case, caused the delay.
While the plaintiffs claim the delay diminished the ability of the court to recall the evidence, the detailed findings of the court belie that. This was a complex toxic-tort case. The court's decision was thirty-six pages long, stating in detail the contentions of the parties, the law, and the evidence presented. The court explained the rationale for the ruling with detailed references to the evidence. While rule 22.10(1) anticipates the filing of decisions in sixty days, there are obviously cases that, through no fault of the court, will fall outside those parameters. This is one of them. In addition, the plaintiffs have *563 failed to show how this delay should translate into either a new trial or a de novo review by this court, as they request. We reject this assignment of error.

IV. The School Records Issue.

The trial court referred to the school records of the older, nonplaintiff siblings and suggested genetics may have been partly responsible for the plaintiffs' problems. The court stated: "[Plaintiff children] exhibit behaviors and experience educational frustrations similar to those exhibited and experienced by their older siblings." The school records included psychological reports by clinical psychologists at the Grant Wood Area Education Agency, including assessments based on interviews with the children and tests performed on them; health development information, including questions of the children's parents regarding routine medical matters; medical histories provided by medical personnel in Iowa and Florida; and reports on the children from school professionals in connection with an individualized education program provided under federal law.
The plaintiffs claim protection from disclosure based on two statutes, Iowa Code section 622.10 (2001) (privilege attached to medical, health care, school guidance counselor, and mental health professionals) and Iowa Code section 22.7(1) (confidentiality of school records).
A. Application of section 622.10. The privilege statute, Iowa Code section 622.10, provides:
A practicing attorney, counselor, physician, surgeon, physician assistant, advanced registered nurse practitioner, mental health professional, or the stenographer or confidential clerk of any such person, who obtains information by reason of the person's employment, or a member of the clergy shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.
(Emphasis added.)
The scope of section 622.10 is broad enough to include some of the records sought by the defendants in this case, including records of "mental health professionals," which are defined by statute:
For the purposes of this section, "mental health professional" means a psychologist licensed under chapter 154B, a registered nurse licensed under chapter 152, a social worker licensed under chapter 154C, a marital and family therapist licensed under chapter 154D, a mental health counselor licensed under chapter 154D, or an individual holding at least a masters degree in a related field as deemed appropriate by the board of behavioral science examiners.
Iowa Code § 622.10(5).
The defendants contend these records should nevertheless be accessible because "it should have been obvious to the parents that the information obtained and results of the [psychological] evaluations were going to be shared with the school and the teachers," and therefore were not intended to be confidential. They cite State ex rel. Leas in Interest of O'Neal, 303 N.W.2d 414, 420 (Iowa 1981) (holding privilege inapplicable in parent-termination case because communication between psychologist and patient was intended to be disclosed to others, and the examination was not for counseling or treatment).
Here, the school records were prepared for the purpose of sharing the information *564 with others outside the professional relationship, specifically the schools, and thus they were not intended to be confidential. We said in Leas:
We do not believe that the communications between Dr. Moore [the clinical psychologist] and [the parents] were intended to be confidential; nor were the communications related to diagnosis or treatment. Dr. Moore's psychological testing and interviews were part of a plan arranged at the request of the Department of Social Services for the purpose of making recommendations that would enable the [parents] to regain custody of [their daughter]. It should have been apparent to the [parents] that the Department would be apprised of the results of their evaluations. Therefore, the O'Neals cannot seriously contend that their communications with Dr. Moore were confidential in nature. Furthermore, the O'Neals' counsel conceded that [Dr.] Moore's examinations were solely for the purpose of evaluation, as opposed to diagnosis or treatment, at the termination hearing: "[T]here in fact, was no psychological counseling or treatment whatsoever or attempted."
303 N.W.2d at 420. We conclude the school records were not rendered inadmissible by section 622.10.
B. The confidentiality claim. The plaintiffs also claim the school records were confidential under Iowa Code section 22.7, which provides:
The following public records shall be kept confidential, unless otherwise ordered by a court, by the lawful custodian of the records, or by another person duly authorized to release such information:
1. Personal information in records regarding a student, prospective student, or former student maintained, created, collected or assembled by or for a school corporation or educational institution maintaining such records....
(Emphasis added.)
Chapter 22 is known as our Freedom of Information Act. See Howard v. Des Moines Register & Tribune Co., 283 N.W.2d 289, 299 (Iowa 1979). As the act was originally proposed, it made all records in the possession of public officials open for public view. Specific exemptions, such as the one for school records, were added by floor amendment. Id. (citing Note, Iowa's Freedom of Information Act: Everything You've Always Wanted to Know About Public Records But Were Afraid to Ask, 57 Iowa L.Rev. 1163 (1972)). The broad scope of the chapter is apparent in section 22.2(1):
Every person shall have the right to examine and copy public records and to publish or otherwise disseminate public records or the information contained therein.
We have said that
[f]rom this [broad statement] we discern that the statute's purpose is "to open the doors of government to public scrutinyto prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act."
N.E. Council on Substance Abuse, Inc. v. Iowa Dep't of Pub. Health, 513 N.W.2d 757, 759 (Iowa 1994) (quoting Iowa Civil Rights Comm'n v. City of Des Moines, 313 N.W.2d 491, 495 (Iowa 1981)).
The act establishes a liberal policy of access from which departures are to be made only in discrete circumstances. The specific exemptions in section 68A.7 (now 22.7) are to be construed narrowly.
Head v. Colloton, 331 N.W.2d 870, 874 (Iowa 1983).
*565 The school records in this case clearly fall within the exception to the openness of public records because they are "records regarding a student ... maintained, created, collected or assembled by or for a school" under Iowa Code section 22.7(1). The issue is whether the records are subject to disclosure under the "unless otherwise ordered by a court" language of that section. The defendants argue that a subpoena is a court order within the meaning of section 22.7.
Cases involving lead poisoning in children have required a showing of relevancy and materiality to allow school records of nonplaintiff siblings. See, e.g., Anderson v. Seigel, 175 Misc.2d 609, 668 N.Y.S.2d 1003, 1005 (N.Y.Supp.1998). We believe a subpoena is a sufficient court order under section 22.7(1) to allow a party to obtain possession of records to allow a court an opportunity to assess their relevancy and materiality. Otherwise, a court would have to make those determinations in a vacuum without even seeing the records. Cf. In re Iowa State Commerce Comm'n, 252 Iowa 1237, 1244, 110 N.W.2d 390, 395 (1961) ("It clearly was not the legislative intent that the Commission first prove the fact to be determined [before the subpoena is issued].").
Under Iowa Rule of Evidence 401 " `[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See also State v. Rodriquez, 636 N.W.2d 234, 239 (Iowa 2001).
The plaintiffs seem to concede the school records are relevant; however, they argue "it's not close[ly] enough connected to allow a violation of the privacy interests that are attached," apparently basing their argument on the probative value/prejudice determination of the court.
Despite this argument, the court held the records to be admissible, stating:
The Court recalls the testimony of Dr. Shapiro [a plaintiff's witness] and that of the other witnesses with regard to the genetic effect of IQ and the other aspects of the question in this particular case. The court finds that Exhibits BE and BF [siblings' school records] should be and are received. The objection is overruled.
This ruling, immediately following the plaintiffs' argument that the evidence was not "close[ly] enough connected to allow a violation of the [plaintiffs'] privacy interests," is at least an implied rejection of the probative value/prejudice argument.
Our review of such rulings is for abuse of discretion. Lovick v. Wil-Rich, 588 N.W.2d 688, 692 (Iowa 1999). An abuse may be found if there is no record to support the court's factual determination or when the ruling is based on clearly untenable reasons. Citizens' Aide/Ombudsman v. Miller, 543 N.W.2d 899, 901 (Iowa 1996). There was other evidence already in the record, through the testimony of teachers, concerning the siblings' performance in school. There was expert testimony that genetics may account for some of the symptoms exhibited by the plaintiffs, and the school records were probative on that question.
We conclude the court did not abuse its discretion in admitting the school records.

V. Sufficiency of the Evidence.

The findings of fact of a district court in a bench trial are affirmed if supported by substantial evidence, Hendricks v. Great Plains Supply Co., 609 N.W.2d 486, 490 (Iowa 2000), and we view the evidence in the light most favorable to the trial court's judgment. Van Oort Constr. *566 Co. v. Nuckolls Concrete Serv., 599 N.W.2d 684, 689 (Iowa 1999).
According to one study, ingestion of old, chipping paint and paint dust is the major source of lead for children. Ctrs. for Disease Control & Prevention, United States Dep't of Health & Human Servs., Preventing Lead Poisoning in Young Children 18-19 (1991). The defendants strenuously argue that exposure of the children to lead occurred in Florida, not in the defendants' property in Iowa City. There was evidence that suggested, based on the fact that Victor's lead levels remained elevated after being treated in Iowa, that the lead had been stored in his bones, and this probably could not have happened in the short time he was in the Iowa City home. There was also testimony regarding possible lead contamination in Florida. In fact, one witness testified that the yard around their Florida home was just paint chips and glass. One expert testified that most lead ingestion occurs before the age of three; all of the plaintiff children were over that age when they came to Iowa. We believe that, viewing the trial court's findings in the light most favorable to the judgment, there was substantial evidence to support it.
AFFIRMED.