# IN THE COURT OF APPEALS OF IOWA

No. 17-1268
Filed July 18, 2018

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**QUINCY THOMAS ROSS,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Scott County, Mark R. Lawson (plea) and Nancy S. Tabor (sentencing), Judges.

     Quincy Ross appeals his convictions and sentences entered following guilty pleas to one count of possession of a controlled substance with intent to deliver and one count of child endangerment without injury. **CONVICTIONS AFFIRMED, SENTENCES VACATED, AND REMANDED FOR RESENTENCING.**

     Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

     Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

     Considered by Danilson, C.J., and Mullins and McDonald, JJ. Tabor, J., takes no part.

**DANILSON, Chief Judge.**

Quincy Ross appeals his convictions and sentences following guilty pleas for possession of a controlled substance with intent to deliver and child endangerment without injury. He contends his trial counsel provided ineffective assistance for failing to challenge his guilty plea to the child-endangerment charge on factual-basis grounds. Ross also claims the district court erred in refusing to consider additional evidence in mitigation of his punishment.

**I. Background Facts and Proceedings.**

On October 30, 2016, Davenport Police Department conducted surveillance on Quincy Ross's residence as part of an ongoing narcotics investigation. During the surveillance, officers observed Ross and a small child—later identified as Ross's son—exiting a vehicle that Ross had parked in front of his residence. The police were aware Ross had warrants out for his arrest and that he was barred from driving. When officers attempted to make contact, Ross fled on foot towards his residence with his son following him. Once Ross was in his residence, he slammed the door, which hit his son and caused a laceration over his left eye. Ross eventually exited his residence peacefully and was placed into custody.

Ross was charged with one count of possession of a controlled substance with intent to deliver; one count of child endangerment; and one count of operating a motor vehicle while license barred, as a habitual offender. Ross was given notice of the State's intent to pursue a habitual-offender enhancement due to his prior felony convictions. An agreement was reached in which Ross would plead guilty to the possession charge and a lesser-included offense of child endangerment without injury in exchange for the State dismissing the operating-a-motor-vehicle-

while-barred charge. Additionally, the State would be able to make any recommendation at the time of sentencing; however, it would not pursue the habitual-offender sentencing enhancement, and if the State recommended incarceration, it would recommend concurrent sentences. On his written guilty plea for the child-endangerment offense, Ross handwrote that he "put my child at risk by running toward house and away from police."

Ross was informed during his plea-taking hearing and in his written guilty plea that to challenge the plea he must file a motion in arrest of judgment. The court accepted Ross's guilty pleas to one count of possession with intent to deliver and one count of child endangerment without injury. Ross did not file a motion in arrest of judgment. During his sentencing hearing, Ross presented two exhibits that he filed earlier that morning consisting of certificates of completion of varying programs and letters from family, friends, and from the Salvation Army describing its program and Ross's request for admittance into the program. The court refused to consider the letters and sentenced Ross to an indeterminate ten-year prison term for the possession offense and an indeterminate two-year term for the child-endangerment offense, to be served concurrently. No mandatory minimum or habitual-offender enhancements were imposed. Ross now appeals.

**II. Scope and Standards of Review.**

"We review claims of ineffective assistance of counsel de novo because the claims implicate the defendant's Sixth Amendment right to counsel." *State v. Perkins*, 875 N.W.2d 190, 192 (Iowa Ct. App. 2015) (citing *State v. Thorndike*, 860 N.W.2d 316, 319 (Iowa 2015)).

We review the sentence imposed in a criminal case for correction of errors at law. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). We will not reverse "absent an abuse of discretion or some defect in the sentencing procedure." *Id.*

**III. Discussion.**

*A. Factual Basis.* Ross contends his guilty plea to the charge of child endangerment lacked a factual basis and, consequently, his counsel was ineffective for allowing him to enter the guilty plea and failing to challenge the plea through a motion in arrest of judgment. Ross argues there was a lack of evidence on the knowledge element of the child-endangerment charge.

Generally, a defendant must file a motion in arrest of judgment in order to challenge a guilty plea. *State v. Straw*, 709 N.W.2d 128, 132 (Iowa 2006). If a defendant fails to file a motion in arrest of judgment after the court has informed the defendant of their obligation to do so, they cannot directly appeal from the guilty plea. Iowa Rs. Crim. P. 2.8(d), .24(3)(a); *see also Straw*, 709 N.W.2d at 132. When counsel fails to file such a motion, a defendant may attack the plea on appeal through a claim of ineffective assistance of counsel. *Perkins*, 875 N.W.2d at 192.

To prevail on a claim of ineffective assistance of counsel, the defendant must show by a preponderance of the evidence that (1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Thorndike*, 860 N.W.2d at 320.

"Where a factual basis for a charge does not exist, and trial counsel allows the defendant to plead guilty anyway, counsel has failed to perform an essential duty." *State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014) (quoting *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999)). "Prejudice is inherent in such a

case." *Id.* Therefore, our "only inquiry is whether the record shows a factual basis for the guilty plea." *Id.* "The factual basis must be contained in the record, and the record, as a whole, must disclose facts to satisfy all elements of the offense." *State v. Ortiz*, 789 N.W.2d 761, 767–68 (Iowa 2010). "A factual basis can be discerned from four sources: (1) inquiry of the defendant, (2) inquiry of the prosecutor, (3) examination of the presentence report, and (4) minutes of evidence." *Id.* at 768. Moreover, "the record does not need to show the totality of the evidence necessary to support a guilty conviction, . . . it need only demonstrate facts that support the offense." *Id.*

> Iowa Code section 726.6(1)(a) (2015) provides,
>
> [A] person who is the parent, guardian, or person having custody or control over a child . . . commits child endangerment when the person . . . [k]nowingly acts in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety.

"We interpret the word 'knowingly' in this statute to mean 'the defendant acted with knowledge that [he or] she was creating substantial risk to the child's safety.'" *State v. Leckington*, 713 N.W.2d 208, 214 (Iowa 2006) (alteration in original) (citation omitted). "[I]t is the appreciation of the risk to the child or minor posed by one's conduct that creates criminal culpability under this statute." *State v. Millsap*, 704 N.W.2d 426, 430 (Iowa 2005).

> Section 726.6(1)(a) requires a showing of substantial risk to a child's physical health or safety. It does not require proof that the conduct was negligent or reckless, although such actions may create a substantial risk. The above discussion also makes it unnecessary to prove that the physical risk to a child's health or safety is likely. Rather a showing that the risk is real or articulable will suffice.

*State v. Anspach*, 627 N.W.2d 227, 232–33 (Iowa 2001).

Ross argues the record does not establish that he knowingly acted in a manner to create a substantial risk to his son. He contends the confrontation between the police and himself was not violent and argues his son merely followed him into his residence and his son appeared to have accidentally hit his head in the process of following his father.

The court had before it the minutes of evidence, Ross's consent to rely on the minutes of evidence to establish a factual basis for his guilty plea, the presentence investigation, and Ross's statement in his written guilty plea admitting he put his child at risk. Upon our de novo review, we are satisfied the facts support the offense and conclude a factual basis for the challenged plea to child endangerment existed. Therefore, we find defense counsel did not breach an essential duty in allowing Ross to enter the plea or in failing to file a motion in arrest of judgment to challenge his plea. We affirm his conviction for child endangerment.

*B. Sentencing.* Ross also argues the district court erred and abused its discretion by refusing to consider additional evidence in mitigation of his punishment. Specifically, Ross argues the court failed to consider letters of support from family and friends, along with a letter of acceptance into a Salvation Army program.

Before the sentencing hearing, the defense filed certificates of completion of various programs and courses Ross obtained while in jail. The defense also filed several letters from Ross's family and friends for the court's consideration during sentencing. The defense explained to the court the letters were not from victims when the court inquired about the authors. The court first stated, "[O]nly victims are allowed to speak," and subsequently stated,

Well, I'm not going to consider them. They're not victims. He can tell me about what support he has. The State has an opportunity to present other character references and you didn't give them that opportunity. You can put them there for your prison people or [the presentence investigation] people.

However, the State made no objection to the exhibits.

"An abuse of discretion will only be found when a court acts on grounds clearly untenable or to an extent clearly unreasonable." *State v. Hopkins*, 860 N.W.2d 550, 553 (Iowa 2015) (citation omitted). "We give sentencing decisions by a trial court a strong presumption in their favor." *Id.*

"When a sentencing court has discretion, it must exercise that discretion." *State v. Ayers*, 590 N.W.2d 25, 27 (Iowa 1999). "Failure to exercise that discretion calls for a vacation of the sentence and a remand for resentencing." *Id.* Iowa Code section 901.2(1) mandates, "[T]he court shall receive from the state, from the judicial district of department of correctional services, and from the defendant any information which may be offered which is relevant to the question of sentencing." Moreover, the court "may consider information from other sources." Iowa Code § 901.2(1). In statutory provisions, the use of the word "'shall' imposes a duty," "'must' states a requirement," and "'may' confers a power." Iowa Code § 4.1(30)(a)–(c).

The sentencing court appeared to believe it could not consider the letters because the letters were not from victims. We presume the court's concern was related to victims' rights and limitations found in Iowa Code chapter 915. Specifically, Iowa Code section 915.21 allows a victim to provide a written or oral victim-impact statement without being subject to an oath or cross-examination. However, "victim" is limited to someone who has "suffered physical, emotional, or

financial harm," but can include the victim's immediate family if such a victim has died, become incompetent, or is a minor. Iowa Code § 915.10(3).

Regardless, Ross was not attempting to present evidence from a victim, but rather mitigating evidence as permitted by section 901.2(1). If the situation had been one where the letters were mailed to the court by the individuals themselves rather than presented by the defendant, then the letters may have qualified as information "from other sources." However, the letters and documents were filed by the defendant before the sentencing hearing and clearly the defendant desired the exhibits be considered for sentencing purposes. Thus, pursuant to section 901.2(1), the court was under a duty to consider defendant's mitigating evidence in sentencing—at least absent an objection by the State.[1] Moreover, before pronouncing judgment and sentence, the court must receive and examine "all pertinent information." Iowa Code § 901.5.

Our supreme court has long held a defendant is entitled to fundamental fairness at sentencing. *State v. Drake*, 259 N.W.2d 862, 867 (Iowa 1977), *abrogated on other grounds by State v. Kaster*, 469 N.W.2d 671, 673 (Iowa 1991). Here, whether we describe the failure to accept mitigating evidence as an "abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public

---

[1] We acknowledge defense counsel did not formally request admission of the exhibits but any formal offer of the exhibits would have been futile after the court explained she was not going to consider them. We also acknowledge the State could object or seek additional time to consider the exhibits. However, any objection that the letters were not prepared by victims should be denied. Iowa Code § 901.2(1); *see also State v. Gahagen*, No. 16-0209, 2017 WL 2461463, at *5 (Iowa Ct. App. June 7, 2017) (holding court failed to exercise discretion in refusing to consider relevant information on the issue of sentencing).

sense of fair play," we conclude Ross's sentences must be vacated and this proceeding be remanded for resentencing. *See id.* at 867 (quoting *State v. Delano*, 161 N.W.2d 66, 74 (Iowa 1968)); *see also State v. Ashley*, 462 N.W.2d 279, 281 (Iowa 1990) (concluding "Iowa Code sections 901.2 through 901.4 reflect the legislature's concern for orderly presentation of information to the court for sentencing purposes and the fundamental notion of fairness").[2]

On this record, we are also unable to conclude there was substantial compliance by permitting the defendant to discuss some of the contents of his exhibits as suggested by the dissent. We are not convinced Ross's rendition, or his counsel's rendition, of the exhibits' contents would have had the same impact upon a sentencing court under these facts. Informing the sentencing court of a job, a change of lifestyle, a place to live, and other positive characteristics and accomplishments via letters and exhibits from an employer, representatives of facilities or organizations, as well as family and friends, was influential mitigating evidence not fully considered by the court. We, therefore, vacate Ross's sentences and remand for resentencing.

**CONVICTIONS AFFIRMED, SENTENCES VACATED, AND REMANDED FOR RESENTENCING.**

McDonald, J., concurs; Mullins, J., concurs in part and dissents in part.

---

[2] Even probationers and parolees are entitled to a revocation hearing, permitting the individual "to be heard in person and to present witnesses and documentary evidence," among other rights. *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

**MULLINS, Judge (concurring in part and dissenting in part).**

I concur in the decision to affirm the child endangerment conviction. I write separately to respectfully dissent from the decision to vacate the sentences and remand for resentencing. Our standard of review should be for abuse of discretion in the sentencing decision, not for legal error or abuse of discretion on a matter of evidence if such error does not show an abuse of discretion in the sentencing decision.

Ross argues the district court erred and abused its discretion by refusing to consider additional evidence in mitigation of his punishment. Specifically, Ross argues the court failed to consider letters of support from family and friends along with a letter acknowledging Ross's request for admission into a Salvation Army program. We review the sentence imposed in a criminal case for correction of errors at law. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). We will not reverse "absent an abuse of discretion or some defect in the sentencing procedure." *Id.*

The sentencing hearing was scheduled for 8:30 a.m. on July 28, 2017. At 7:00 a.m. that day, defense counsel filed with the clerk of court two proposed exhibits: the first containing certificates of completion of various programs and courses Ross completed while in jail, and the second containing several letters from Ross's family and friends and the Salvation Army Adult Rehabilitation Center. During the hearing, defense counsel identified those exhibits for the court. When the court inquired about the authors, counsel explained that the letters were not from victims. The court then stated "Well, I'm not going to consider them. They're not victims. He can tell me about what support he has." Although counsel made

no formal offer of the exhibits into evidence, the combined general docket shows the exhibits were exhibits (no longer proposed exhibits) at 9:01 a.m.[3]

If the record ended there, I might be concurring with the majority. But, we must examine the entire record, because "[a]n abuse of discretion will only be found when a court acts on grounds clearly untenable or to an extent clearly unreasonable." *State v. Hopkins*, 860 N.W.2d 550, 553 (Iowa 2015). "We give sentencing decisions by a trial court a strong presumption in their favor." *Id.* "When a sentencing court has discretion, it must exercise that discretion." *State v. Ayers*, 590 N.W.2d 25, 27 (Iowa 1999). "Failure to exercise that discretion calls for a vacation of the sentence and a remand for resentencing." *Id.*

Iowa Code section 901.2(1) mandates the court "shall receive from the state, from the judicial district of department of correctional services, and from the defendant any information which may be offered which is relevant to the question of sentencing." Moreover, the court "may consider information from other sources." Iowa Code § 901.2(1). The use of the word "shall" imposes a duty, "must" states a requirement, and "may" confers a power. *Id.* § 4.1(30)(a)–(c). Although the sentencing transcript record contains no formal offer of Ross's proposed exhibits and contains no verbal indication the court admitted the exhibits in evidence, I interpret the combined general docket to mean the proposed exhibits filed at 7:00 a.m. were admitted into evidence and docketed at 9:01 a.m. As such, the exhibits were "received" by the court from the defendant. *See id.* § 901.2(1). The contents of the letters can be characterized as providing unsworn facts and

---

[3] The record does not show an exhibit maintenance order. *See* Iowa Ct. R. 16.412(2)(c).

opinions concerning family circumstances and employment and rehabilitation potential. Thus, they were relevant to the question of sentencing. *See id.*

> A sentencing court has a duty to consider all the circumstances of a particular case. We do not believe however, it is required to specifically acknowledge each claim of mitigation urged by a defendant. Furthermore, the failure to acknowledge a particular sentencing circumstance does not necessarily mean it was not considered. Instead, we review a sentence for an abuse of discretion based on the entire record, and look to see if the reasons articulated by the trial court are sufficient to enable us to determine if an abuse of discretion occurred.

*State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995) (citation omitted).

When the district court stated it refused to consider the letters, it also told counsel, Ross "can tell me about what support he has." Defense counsel proceeded to make a thorough recommendation and argument in support. In response to remarks by defense counsel, the court inquired as to the voluntary placement status of the Salvation Army program and with regard to making placement a condition of probation, the court stated: "Doesn't appear from that letter they accept that, but maybe they do." Thus, the court had read and considered the Salvation Army letter—defendant's second exhibit—though not orally admitted into evidence.

Ross then spoke in mitigation and was given a full opportunity to say what he wanted, and did so in a lengthier manner than we often see. He told the court he made a mistake and was really sorry, that he has two sons and wanted an opportunity to make things right so his younger son "doesn't take these steps that I made in my life." He told the court a lot of people look up to him and he asked for mercy so he could make things right with his family and better himself. He explained he had a job waiting for him, wanted to make things right for his sons'

sake and was sorry for putting his family through this.   Ross's allocution takes eighteen lines of the sentencing transcript.  When the court announced its reasons for imposing the sentence, it stated:

> Now, I've read this PSI, and I've heard what you said today and I see your things that you've done in jail, and I'm glad you've been productive in the jail.  You're lucky that this is one jail that has a lot of programs that do help people, but it's not our fault that you didn't get substance abuse treatment in the jail.
>
> That's your fault, and it's based on—and today, based on this, I'm looking at a history of somebody since back in 2003, 2005, frankly, your actions speak louder than your words.  You've got an 8-year-old son and today is the first time that you're sorry that you put him through this?  Where have you been the last eight years?
>
> You've been in prison.  You've been continuing to use substances since you've been off parole, and you've been deceptive.  You've been deceptive to those people back there about your life and your relationships.  You've been deceptive to yourself, and that's not the type of person who's gonna be successful on probation, and that's why—plus these are assaultive kind of behaviors.
>
> Every single time there's all these failures to appear with warrants issued, failure to appear, warrants issued, probation, parole violation.  You knew in May that part of your parole was not to use drugs, and you continued to do that.
>
> THE DEFENDANT: That's why I'm seeking if you can give me some type of help.  I don't think prison will help me, ma'am.
>
> THE COURT: Well, obviously you didn't seek the community help that was available in this community.  Salvation Army has been there for years.  It's voluntary.  You haven't been in that.  You haven't taken advantage—now that you're gonna be sent to prison again, all of a sudden you're willing to go.  You've got all these judgments that you haven't paid and past things.
>
> You've been unemployed, yet you seem to have enough money to buy drugs.  Frankly, your priorities have not been in the right place.  You've not been accepted to drug court.  That might have been a good place for you, but I'm not in charge of that program.  They have specific criteria, and yours haven't been accepted.  The Residential Corrections Facility isn't gonna accept somebody who's got a history of violence like you do.
>
> We've—frankly, we don't have any other community resources that I think are appropriate or that you've availed yourself of up until maybe now you're saying that you're gonna go to the Salvation Army, but I don't believe at this time that probation is an appropriate disposition, and I'm going to not suspend the sentence,

and I'm gonna order that you be delivered to the Iowa Department of Corrections.

On my review of the entire record, I would find that, although the court announced it would not consider the letters, its thorough and interactive recitation of reasons for its sentencing decision in fact responded to the primary themes contained in the letters. The court invited Ross to tell her what he wanted her to know from the letters; and, although he did not reference the letters in his statements in mitigation, his summarized remarks to the court embodied their essence. The court did nothing to limit or hinder his ability to allocute. He was given the opportunity to say what he wanted. The court then explained its reason for the sentence in detail, reciting numerous facts and factors it considered. After carefully reviewing the entire record, it is clear to me the court considered all the relevant and pertinent facts and circumstances, and did not abuse its discretion in its sentencing decision.

I would affirm the sentence.