# IN THE SUPREME COURT OF IOWA

No. 17–1701

Filed March 6, 2020

STATE OF IOWA,

    Appellee,

vs.

STEVE W. FORDYCE II,

    Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk Judge.

The defendant seeks further review of a court of appeals decision affirming his conviction for voluntary manslaughter. **DECISION OF COURT OF APPEALS VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

Christopher A. Kragnes Sr., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Israel J. Kodiaga and Linda J. Hines, Assistant Attorneys General, and Brian Williams, County Attorney, and Brad Walz, Assistant County Attorney, for appellee.

**CHRISTENSEN, Chief Justice.**

Under Iowa law, a person is justified in the use of reasonable force, including deadly force, if that person reasonably believes the force used was necessary to defend himself or another from any imminent use of unlawful force. *See* Iowa Code § 704.1, .3(2015). The question presented is whether the State proved beyond a reasonable doubt that the defendant was not justified in his use of deadly force.

In 2015, the defendant shot and killed his sister's neighbor. The defendant alleged he was justified in his use of deadly force pursuant to Iowa Code section 704.3. After a jury-waived trial, the district court convicted the defendant of voluntary manslaughter. It determined the State proved beyond a reasonable doubt the defendant was not justified in his use of deadly force. Unfortunately, eleven months elapsed between submission of the defendant's case and entry of the district court's verdict.

The defendant appealed, and we transferred the case to the court of appeals. Upon its review, the court of appeals determined substantial evidence proved the defendant was not justified in his use of deadly force. The court of appeals also rejected the defendant's due process and equal protection claims.

We granted the defendant's application for further review. On our review, we agree with the court of appeals that substantial evidence proved the defendant was not justified in his use of deadly force. However, we disagree with the court of appeals' reasoning. Viewing the evidence in a light most favorable to the State, we conclude the defendant continued the incident which resulted in death. Regarding the defendant's due process and equal protection claims, we affirm the decision of the court of appeals on those issues. Accordingly, the decision of the court of appeals is

vacated in part and affirmed in part; we affirm the judgment of the district court.

## I. Background Facts and Proceedings.

Substantial evidence in the record supports the following facts. On an early summer evening in August 2015, Steven Fordyce and his two six-year-old children visited his sister, Nikki, who lived in Waterloo. Nikki's house faced West First Street. Her neighbor, Samantha Harrington, owned abutting property. Samantha's house faced Locust Street, and a fence partially divided the two properties. Fordyce parked his red truck in Nikki's driveway, which was located near the abutting properties.

Around 7:00 p.m., Samantha's husband, Donald Harrington, walked over to her house. Although married, Donald did not live at the Locust Street property. While on Samantha's front porch, Donald noticed the red truck parked in Nikki's driveway. He asked Samantha about the truck, and she informed him it belonged to Nikki's brother. At some point in the evening, Donald noticed Fordyce's children throw garbage over the property-line fence. Visibly shaken and upset, Donald conveyed this information to Samantha. She changed the subject of the conversation and moved the couple toward two chairs arranged on her porch.

Samantha and Donald remained seated on her porch. Later, Fordyce backed his truck out of Nikki's driveway. As he did this, Donald "flipped the bird" at Fordyce. Fordyce stopped his truck in front of Samantha's house. He made a questioning gesture from the truck in response to Donald's action. Donald descended from the porch, approached Fordyce's truck, and attempted to open the truck door. Fordyce had a handgun on his person while in the truck, which he had a lawful permit to carry. He did not display or point the handgun at Donald, who was unsuccessful in opening the truck door because it was locked.

Fordyce was confused by Donald's hostility, but he understood it had something to do with his children's fruit snack wrappers being thrown over the property-line fence. Through the door of Fordyce's truck, Donald said something to the effect of "Come on. You want to go?" Fordyce drove away before Donald could walk around to the back of the truck. At this point, the district court found that Donald initiated this encounter and was the aggressor.

Donald returned to Samantha's porch. Samantha feared there would be more trouble, and she instructed Donald to call his brother. She flagged down her children's friends and told them to find her boys because she thought "there's gonna be some shit going on." She suspected Fordyce was "gonna go get Nikki and them," which would further escalate the already contentious environment.

Meanwhile, Fordyce drove up the street and completed a U-turn, returning to Nikki's house. Nikki and her son's girlfriend, Katia, were seated on Nikki's porch. Fordyce drove his truck onto Nikki's front lawn, parked, and from his rolled-down window explained that Donald "went nuts" and cautioned about potential "drama" with her neighbors. Nikki and Katia then ran next door to confront Samantha and Donald. Fordyce instructed his children to remain in his truck while he followed Nikki and Katia.

Samantha and Donald were sitting on the porch when Nikki, Katia, and Fordyce approached Samantha's house. Fordyce was trailing behind Nikki and Katia. Samantha got up to confront Nikki and Katia at the bottom of the porch steps while Fordyce stood back near Samantha's property line and observed. Donald did not appear concerned with the women's arguing until he noticed Fordyce standing near Samantha's property line. Donald then quickly descended the porch to confront

Fordyce face-to-face. Donald was a large man, standing at approximately six feet, three inches tall and weighing about 281 pounds. Witnesses described him as overweight, pudgy, "a marshmallow man," and not very fast moving. Samantha indicated Donald "walked like a pregnant woman. . . . like, a pregnant woman that was about ready to give birth."

As Donald approached Fordyce, Nikki announced Fordyce had a handgun and asked Donald what he was going to do now. Fordyce had his handgun in his pocket and did not brandish it prior to Donald's advancement. Samantha then saw Donald standing approximately three feet from Fordyce who had his handgun pointed at Donald. She had not seen the handgun prior to that. Donald had his hands outstretched in the air while holding a cell phone. Donald's prior phone call to his brother connected and recorded his agitated voice saying, "it's over with," "fucking kill you," and "go ahead, go ahead." Samantha recalled Donald saying something along the lines of "shoot me then."

According to Fordyce, Donald then charged at him, but "not like a football player that's gonna come tackle" him. Fordyce backed up, drew his handgun, and fired three or four shots at Donald. Samantha estimates roughly four seconds passed from the time Donald left the porch to the time he was shot. The firearms-testing report determined one of the shots that struck Donald was fired at some distance greater than two feet but less than four feet. Another shot was fired with the muzzle of the handgun at some distance of three feet away or greater. Donald remained standing for the first two shots but fell to the ground after being hit the third time.

Fordyce walked back to his truck, placed his handgun in the glove box, and told his children to get inside Nikki's house. He locked the truck and waited for law enforcement to arrive. It is undisputed Fordyce shot Donald to death.

The State charged Fordyce with the first-degree murder of Donald in violation of Iowa Code section 707.2(1)(*a*). Fordyce entered a plea of not guilty, filed notice of self-defense, and waived his right to a jury trial. The nonjury trial commenced on August 2, 2016, and after a weeklong recess, concluded on August 19. Fordyce moved for a judgment of acquittal at the close of the State's case, but the district court elected to reserve its ruling. The case was submitted to the district court on September 29. Before the district court issued its ruling, the Iowa legislature rewrote Iowa Code section 704.1 to include a new "stand your ground" provision. Fordyce filed a motion on August 23, 2017, asking the district court to apply the new provision. He argued because a final verdict had not been rendered, the district court was required to apply Iowa Code section 704.1 as amended.

On August 29—eleven months after submission of the case—the district court entered its verdict. The district court determined the stand-your-ground provision did not require retroactive application and declined to apply Iowa Code section 704.1 as amended. The district court found the State proved beyond a reasonable doubt that Fordyce was not justified in his use of deadly force against Donald. First, regarding self-defense, the district court found Fordyce continued the incident with Donald and found Fordyce could have pursued an alternative course of action by retreating. Second, the district court found Fordyce was not justified in his use of deadly force to defend another because Nikki and Katia were initiating a further escalation of tensions between Donald and Samantha in addition to continuing the incident set in motion by Donald. Fordyce was acquitted of first- and second-degree murder. However, the district court found Fordyce guilty of the lesser included offense of voluntary manslaughter. Fordyce filed a combined motion for new trial and motion

in arrest of judgment, arguing the verdict was contrary to the weight of the evidence and that the State failed to prove beyond a reasonable doubt he did not act in self-defense. The district court denied Fordyce's motion and sentenced him to an indeterminate term of confinement not to exceed ten years.

Fordyce appealed the denial of his posttrial motion as well as his judgment and sentence. On direct appeal, he argued the State presented insufficient evidence to disprove his self-defense and defense of another beyond a reasonable doubt, the district court violated his due process and equal protection rights by not applying the stand-your-ground provision, and his due process rights were violated by the length of time between his trial and entry of the district court's verdict. We transferred the case to the court of appeals.

The court of appeals affirmed Fordyce's conviction for voluntary manslaughter. Although the court of appeals determined Fordyce did not continue the incident with Donald, it affirmed the district court's finding that he was not justified in his self-defense because he had an alternative course of action available. Regarding whether Fordyce was justified in his use of deadly force to defend another, the court of appeals affirmed the district court's finding that Fordyce was not justified because he knew Nikki and Katia chose to start or continue the incident between Donald and himself. Next, the court of appeals determined the district court correctly refused to apply the 2017 stand-your-ground provision. Lastly, the court of appeals concluded Fordyce's due process rights were not violated for the district court's eleven-month delay in entering its verdict.

Fordyce sought further review of the court of appeals decision. We granted his application.

## II. Standard of Review.

We have the discretion, on further review, to review any issue raised on appeal "regardless of whether a party seeks further review of that issue." *State v. Martin*, 877 N.W.2d 859, 865 (Iowa 2016) (quoting *State v. Bogan*, 774 N.W.2d 676, 679 (Iowa 2009)). Whether the evidence was sufficient to prove beyond a reasonable doubt the defendant did not act in defense of self or another, we view the evidence in the light most favorable to the State. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993). This includes all legitimate inferences and presumptions fairly drawn from the evidence in the record. *State v. Blair*, 347 N.W.2d 416, 418–19 (Iowa 1984). We consider all of the evidence, not just the evidence supporting the verdict. *Thornton*, 498 N.W.2d at 673. "Furthermore, the verdict will be upheld if supported by 'substantial' evidence, i.e., evidence which would convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *State v. Elam*, 328 N.W.2d 314, 319 (Iowa 1982). In jury-waived cases, the findings of fact have the effect of a special verdict, *see* Iowa R. App. P. 6.907, and are binding on us if supported by substantial evidence, *see State v. Abbas*, 561 N.W.2d 72, 74 (Iowa 1997) (per curiam).

## III. Analysis.

**A. Sufficiency of the Evidence.** Justification is a statutory defense permitting a person to use reasonable force, including deadly, if that person reasonably believes the force used was necessary to defend himself or another from any imminent use of unlawful force. *See State v. Stallings*, 541 N.W.2d 855, 857 (Iowa 1995). Fordyce asserted he acted in self-defense and in the defense of another when he shot and killed Donald. *See* Iowa Code §§ 704.1, .3.

We conclude that substantial evidence supports the district court's finding that Fordyce was not justified in his use of deadly force to defend another. The State can prove Fordyce was not justified by showing he "knew the person he helped had started or continued the incident." Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 400.3 (2015); *see State v. O'Shea*, 634 N.W.2d 150, 157 & n.2 (Iowa Ct. App. 2001). Not only did Fordyce know Nikki and Katia chose to run next door and confront Samantha and Donald, he followed them right up to Samantha's property line. Moreover, a defendant is not justified in acting in the defense of another when the defendant himself "started or continued the incident which resulted in death." Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 400.3; *see O'Shea*, 634 N.W.2d at 157 & n.2. As discussed below, Fordyce continued the incident which resulted in Donald's death.

We also conclude that substantial evidence supports the district court's finding that Fordyce was not justified in his use of deadly force to defend himself. When self-defense is raised, the burden rests with the State to prove beyond a reasonable doubt that the justification did not exist. *State v. Shanahan*, 712 N.W.2d 121, 134 (Iowa 2006); *State v. Rubino*, 602 N.W.2d 558, 565 (Iowa 1999). The State can meet its burden by proving any one of the following:

1. The Defendant started or continued the incident which resulted in death; or

2. An alternative course of action was available to the Defendant; or

3. The Defendant did not believe he was in imminent danger of death or injury and the use of force was not necessary to save himself; or

4. The Defendant did not have reasonable grounds for the belief; or

5. The force used by the Defendant was unreasonable.

*Thornton*, 498 N.W.2d at 673; *see Rubino*, 602 N.W.2d at 565; Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 400.2. The district court determined the State proved beyond a reasonable doubt that Fordyce was not acting in self-defense when he shot and killed Donald because he continued the incident with Donald. That verdict is binding on this court, and we will uphold it unless the record lacks substantial evidence to support such a finding. *Abbas*, 561 N.W.2d at 74; *Thornton*, 498 N.W.2d at 673. Fordyce contends the State's evidence was insufficient to disprove his self-defense beyond a reasonable doubt.

We must view the evidence in the light most favorable to the State. This deferential standard of review dictates the outcome. We conclude there was sufficient evidence to prove beyond a reasonable doubt that Fordyce did not act in self-defense. We agree with the district court's findings of how the events unfolded on the evening of Donald's death. To begin, Donald was the aggressor who started the incident with Fordyce. The garbage thrown over Samantha's fence caused Donald to become agitated and irritated. He was described as "visibly shaken. He was very shaken up." That agitation pushed Donald to confront Fordyce. He "flipped the bird" at Fordyce and then attempted to gain access to Fordyce's truck while saying, "Come on. You want to go?" This is substantial proof that Donald started the incident which resulted in his death.

Although Fordyce removed himself and his children from the confrontation with Donald when he drove away from Samantha's house, his next actions continued the incident which resulted in Donald's death. Instead of continuing down the road, Fordyce chose to do an immediate U-turn, return to Nikki's house, and convey that Donald "went nuts" and that there might be "drama" with her neighbors. It is reasonable to assume

that Fordyce's interaction with Donald and his warning about further drama prodded Nikki and Katia to run next door to confront Donald and Samantha. Instead of staying with his children near Nikki's house, Fordyce exited his truck and followed Nikki and Katia back to Samantha's house where Donald was located. Fordyce chose to place himself as close to Samantha's property line as possible in order to interject his presence in the ensuing argument. Fordyce was well aware of the aggression Donald displayed toward him only minutes before he chose to inform Nikki and Katia in person about the potential drama. Fordyce had his cell phone in his truck's cup holder throughout the entire course of events. He later admitted that his cell phone could have been used to call and warn his sister about Donald instead of U-turning to reinsert himself and his children.

The evidence supports that Fordyce was more interested in returning to a scene of smoldering hostilities than he was in discouraging further interaction with the chaos next door. He knew the incident between Donald was far from over. This conclusion is bolstered by Donald's reaction to Fordyce's returning presence. While Samantha, Nikki, and Katia argued, Donald remained on Samantha's porch seemingly unconcerned about their argument. It was only *after* Donald noticed Fordyce standing near Samantha's property line that he again became agitated and upset, leading to his advancement at Fordyce.

After viewing the evidence in a light most favorable to the State, we conclude the evidence could convince a rational trier of fact that Fordyce continued the incident which resulted in Donald's death. The district court's verdict is supported by substantial evidence. Therefore, we must uphold it.

**B. Stand-Your-Ground Provision.** During the 2017 session, the Iowa legislature rewrote Iowa Code section 704.1. *See* 2017 Iowa Acts ch. 69, § 37 (codified at Iowa Code § 704.1 (2018)). The most notable change is the stand-your-ground provision, which eliminates any duty to retreat before using reasonable force if a person is not engaged in illegal activity. Iowa Code § 704.1(3) (2018). Fordyce argues the district court was required to apply the stand-your-ground provision because a final verdict had not been rendered before its effective date.

Given our holding that Fordyce continued the incident which resulted in Donald's death, we need not consider whether the State proved beyond a reasonable doubt that Fordyce had an alternative course of action available. In any event, we agree with the court of appeals that the stand-your-ground provision does not require retroactive application. In *State v. Williams*, 929 N.W.2d 621, 637 (Iowa 2019), we determined the 2017 amendment "was a change in substantive law, and it was the legislature's prerogative not to make that change effective until July 1 [2017]." The court of appeals is correct in noting the question is not the state of the law at the time the district court rendered its verdict, but the state of the law at the time Fordyce shot and killed Donald. *See* Iowa Code § 4.13(1)(*a*) (2015). Iowa did not have the stand-your-ground defense in effect during the 2015 shooting, and it does not apply to Fordyce's case.

**C. Time Between Trial and Verdict.** Eleven months elapsed between submission of Fordyce's case and entry of the district court's verdict finding him guilty of voluntary manslaughter. No matter the complexity of an issue before a court, judicial decisions ordinarily should be reached within sixty days after submission. *State v. Kaster*, 469 N.W.2d 671, 673 (Iowa 1991). To that end, we have in place a monthly reporting rule.

> Each senior judge, district judge, district associate judge, full-time associate juvenile judge, full-time associate probate judge, and judicial magistrate shall report monthly to the supreme court, through the office of the state court administrator, all matters taken under advisement in any case for longer than 60 days, together with an explanation of the reasons for the delay and an expected date of decision.

Iowa Ct. R. 22.10(1). This rule, adopted after extensive study, "accommodates the twin demands of careful deliberation and the obvious necessity for reasonable celerity in resolving disputes." *Poole v. Hawkeye Area Cmty. Action Program, Inc.*, 666 N.W.2d 560, 562 (Iowa 2003) (quoting *Kaster*, 469 N.W.2d at 673). The system of accountability established by rule 22.10 is not lost upon this court. *See In re Carstensen*, 316 N.W.2d 889, 893 (Iowa 1982) (en banc). We are, in fact, "far from unconcerned about delays," *Kaster*, 469 N.W.2d at 673, and "expect [the rule] to be followed," *Carstensen*, 316 N.W.2d at 893.

Fordyce claims the time between submission of his case and entry of the verdict violated his due process rights under both Federal and State Constitutions. More specifically, Fordyce claims he was denied a "right to a fair and speedy trial." We reject his contentions.

To begin, Fordyce waived his right to a speedy trial, and he provides us with no authority that a delay between trial and the district court's verdict violates his due process rights. In *Kaster*, we considered an "incredible and inexcusable" year-long delay between the trial and the magistrate's verdict. 469 N.W.2d at 672. Similar to the case at hand, the defendant in *Kaster* contended the delay was prejudicial and denied him a fair trial. *Id.* We determined Kaster did not suffer a loss of liberty from the postsubmission delay. *Id.* at 673. His concern of the evidence fading from the magistrate's memory was valid, but given the state's burden of proof, we could not say his trial was unfair. *Id.* Our holding in *Kaster* overruled "any intimation . . . that a speedy trial right is violated by delays

in trying or deciding a case which is seasonably brought to trial." *Id.* We rejected as meritless Kaster's claim that the unreasonable delay denied him a fair trial and we refused to reverse his conviction or grant a mistrial. *Id.*

It is unfortunate that the district court's ruling in this case was not filed within sixty days as set out in rule 22.10. The district court, at the sentencing hearing, acknowledged the delay "was a lengthy amount of time" but explained it was the great amount of time "wrestling with the application of the law in this case to the evidence that was presented" that caused it. Contrary to Fordyce's assertions, the detail in the district court's findings belie any claim that the delay diminished its ability to recall the evidence. *See Poole*, 666 N.W.2d at 562. In fact, the district court indicated the findings of fact were completed within several weeks after completion of the trial. The decision in this case was seventeen pages long, stating in detail the parties' arguments, the relevant law, and the evidence presented. Fordyce has failed to show how this postsubmission delay translates into a violation of his due process rights. We remain hopeful that rule 22.10 will continue to drive punctual rulings. *Kaster*, 469 N.W.2d at 673.

### IV. Conclusion.

Viewing the evidence in a light most favorable to the State, we conclude the district court correctly determined Fordyce was not justified in his use of deadly force because he continued the incident which resulted in Donald's death. Pursuant to our decision in *Williams*, the 2017 amendment does not apply to Fordyce's 2015 shooting. Lastly, although we are concerned with the eleven-month delay in the district court's verdict, Fordyce has not shown how the postsubmission delay translates

into a violation of his due process rights under the Federal and State Constitutions.

**DECISION OF COURT OF APPEALS VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Oxley, J., who takes no part.